### SAMPSON et al. v. CLARK.[1]

### No. 400.

United States Emergency Court of Appeals.

Heard at Los Angeles, Cal., April 7, 1947.

Decided June 11, 1947.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

Abraham Gottfried, of Los Angeles, Cal., for complainant.

Israel Convisser, of Washington, D. C. (Carl A. Auerbach, William R. Ming, Jr., Harry H. Schneider, and Miss Catherine W. Goldman, all of Washington, D. C., on the brief), for respondent.

McALLISTER, Judge.

Complainant partnership is a manufacturer of women's, girls,' and children's outer wear garments. It entered business in Los Angeles, California, subsequent to July

[1] By Executive Order No. 9809, 50 U.S.C.A.Appendix, § 601 note, effective December 12, 1946, 11 F.R. 14281, the functions of the Price Administrator were vested in the Temporary Controls Administrator and the Temporary Controls Administrator was accordingly substituted for the Price Administrator as respondent in this case. By Executive Order 9841, effective June 1, 1947, 12 F.R. 2645, the Office of Temporary Controls Administrator was terminated and certain of his functions, including that of defending this suit, were transferred to the Secretary of Commerce, who by Department Order 75 delegated them to the Director of the Division of Liquidation, Department of Commerce. Accordingly, upon suggestion of the Attorney General, the Director of the Division of Liquidation has been substituted as respondent in this case.

12, 1943, and, accordingly, applied to the Office of Price Administration for an order determining the maximum prices for garments which it proposed to sell. This application was made pursuant to Rule 6 of Section 1389.353(c) of Maximum Price Regulation 287,[2] in effect at the time. The order applied for was issued by the District Director of the Los Angeles Office, on July 12, 1943. Approximately eight months later, complainant, pursuant to Section 12(d) of Revised Maximum Price Regulation 287,[3] applied for a second order determining maximum prices for additional categories of the garments it proposed to sell, and such order was issued April 3, 1944.

On September 14, 1945, after an investigation of complainant's operations, the Administrator instituted an enforcement suit against complainant in the Superior Court, State of California, in and for the County of Los Angeles, for violations alleged to have occurred during the period—September 1, 1944 to June 15, 1945. These alleged violations consisted of complainant's having computed its maximum prices on the basis of costs which included overtime, as a direct labor cost, as well as partners' salaries for other than direct labor; and it is declared that this was in violation of the express provisions of the Regulation. It is pointed out that complainant failed to comply with the minimum allowable cost requirements, and listed wage rates for three employees in excess of the wage rates prevailing in the base period.

Subsequent to the filing of such suit, complainant's counsel inquired as to the proper methods by which a new manufacturer, operating under an order authorizing maximum prices, was required, by the Regulation, to determine labor costs. In reply to this inquiry, an official interpretation was issued on April 19, 1946, construing the Regulation as requiring such a seller to compute his direct labor costs on the basis of wage rates paid on March 31, 1942, by the appropriate industry in his area.

On May 13, 1946, complainant filed a protest, contending that neither Maximum Price Regulation 287, Revised Maximum Price Regulation 287, nor the two orders which were issued establishing maximum prices for complainant, provided any method or formula that could be used by "new manufacturers" such as complainant, by which "direct labor costs," as used in the Regulations and orders, could be determined; and that there was no contemporaneous interpretation which indicated any such method or formula. A Board of Review, after the hearing of oral arguments, recommended that the protest be denied, and on December 11, 1946, the Administrator issued an opinion and order denying the protest, whereupon the present complaint was filed.

The issue in the case is whether the Regulations and the orders, referred to, provide a reasonable means, guide, or standard, whereby complainant can determine the wage rates to be used by it in computing the minimum allowable costs for the garments they manufacture. If there is no such means or standard, the Regulation is so uncertain as to be arbitrary.

Maximum Price Regulation 287, and Revised Maximum Price Regulation 287 purport to fix the maximum prices for all manufacturers of women's, girls', and children's outer wear garments, as well as the minimum costs of the materials and labor which may be put into such garments. The maximum price for the sale by a manufacturer of a particular garment depends on the cost to him of producing the garment. The Regulation specifies what costs may be taken into account in calculating the maximum price.

As a "new manufacturer," complainant applied for the fixing of its maximum prices under Rule 6 of Maximum Price Regulation 287, which provided that a manufacturer in the situation of complainant, who did not deliver garments covered by the Regulation during March, 1942, might not sell or deliver such garment until he had received authorization from the Office of Price Administration to estab-

---

[2] This Regulation was issued December 12, 1942. See 7 F.R. 10460.

[3] The Revised Regulation was issued and effective June 29, 1943. See 8 F.R. 9122.

lish maximum prices. The above Rule of the Regulation further states: "If authorization be given, it will be accompanied by instructions as to a method for establishing maximum prices for the garments to be sold. These instructions may be revised at any time by the Office of Price Administration."

After consideration of complainant's application by the District Director of the Office of Price Administration, an order was issued July 12, 1943, authorizing complainant to make sales in the categories therein listed on the terms there set forth, and directing complainant to establish maximum prices, maximum allowable margins, and minimum allowable costs, according to a table included in the order. It was further stated therein that, unless the context otherwise required, the definitions set forth in Maximum Price Regulation 287 should apply to the terms used in the order.

Later, when complainant applied for a second order determining maximum prices for additional categories of garments, it filed its application under Section 12(d) of Revised Maximum Price Regulation 287, which provided that where a manufacturer had already received an order authorizing maximum prices, it could not sell in any additional category of garments until it had been authorized to establish ceiling prices therefor. The section further stated: "If authorization is given, it will be accompanied by instructions as to a method for establishing maximum prices of the garments to be sold * * *."

On consideration of this application for the fixing of maximum prices in additional categories, the Director of the District Office issued an order authorizing complainant to make sales in such additional categories on terms therein set forth, and directing complainant to establish maximum prices upon terms therein stated. The order further recited that the pricing instructions contained in the previous order were incorporated by reference.

However, neither of the two orders, issued by the District Director, referred to, or disclosed any method by which complainant could determine the wage rates, which formed the basis of the "direct labor costs," and, consequently, as claimed by complainant, neither the Regulations nor the orders issued thereunder provided any method by which complainant's maximum prices could be calculated, by the use of the aforesaid items as a basis.

While, as has been said, the maximum price for the sale by a manufacturer of a particular garment depends upon his cost in producing the garment, the method of arriving at the direct labor cost which the Regulation specified is to be taken into consideration in calculating the maximum price, is set forth in Section 1389.373(a) (10) of Maximum Price Regulation 287 and Section 30(a) (10) of Revised Maximum Price Regulation 287, which provide: "'Direct labor costs' shall be calculated on the basis of wage rates paid by you on March 31, 1942, plus any subsequent increase thereto pursuant to a collective bargaining contract or other wage agreement, which contract was entered into on or before July 1, 1942, and provides for an unconditional increase of wage rates of a fixed amount · or percent * * *."

The foregoing Regulations governing the calculation of direct labor costs obviously apply only to manufacturers in business during the base period, as others could not calculate such costs on the basis of wage rates paid by them on March 31, 1942.

No other method or standard of computing or determining direct labor costs or wage rates was referred to or disclosed in the Regulations—at least, not until after the commencement of the enforcement suit by the Administrator against complainant.

Neither of the orders received by complainant was accompanied by instructions as to a method for establishing maximum prices of the garments to be sold, as provided in the Regulations, for there were no instructions as to how to determine the wage rates, and, accordingly, the direct labor costs. As heretofore noted, the maximum prices to be established depended upon the costs of producing the garments.

In answer to complainant's contention, the Administrator replies that complainant's maximum prices were prescribed with

adequate definiteness by Section 30(a) (11) of the Regulation, which provided: "'Direct cost of each garment' shall be the total of the material, trimming, and direct labor costs specified above. If the total direct cost of all the garments in a cutting shall be equal to or greater than the sum of the minimum allowable cost for the garment multiplied by the number of garments cut, then for the purpose of this regulation, every garment in that cutting shall be considered to have the minimum allowable cost."

It is submitted by complainant that Section 30(a) (11) does not prescribe its prices with any definiteness whatever; and that, in providing that the direct cost of each garment shall be "the total of the material, trimming, *and direct labor costs specified above,*" (emphasis supplied), it refers to the direct labor costs as specified in Section 30(a) (10) of the Regulation; and this section provides that "'Direct labor costs' shall be calculated on the basis of wage rates paid by you on March 31, 1942." In other words, complainant contends that none of the sections of the Regulation, in this regard, does more than provide how direct labor costs may be calculated for manufacturers who were in business on March 31, 1942; and that since the Regulation purports to cover all manufacturers selling such garments, but provides only for calculating the wage rates and direct labor costs of manufacturers who were in business in 1942, such provisions do not apply to manufacturers, such as complainant, that did not enter business until after July, 1943.

There is no question that complainant is unable, from the language of the Regulation, to calculate his maximum prices. As the Board of Review said in its opinion: "An anomaly thus exists, since on the one hand, the regulation purports to cover all sellers, including those who like Protestant, entered the field after March 31, 1942, and on the other hand, such a seller finds himself unable to calculate his maximum price under the language used in the regulation." In his opinion, the Administrator states: "Admittedly, some indefiniteness as to the method of determining wage rates did exist."

Under the facts, conceded by the Board of Review and the Administrator, how, then, should complainant have calculated its maximum prices? The Board of Review declared that:

"* * * the duty is laid on him by the inclusive nature of the coverage of the regulation to seek a resolution of the anomaly from the Administrator. * * * The fact of the anomaly itself, however, is not fatal to the validity of the regulation as it applies to Protestant, since it was open to him to escape it by soliciting and generating further action on the Administrator's part.

"* * * The structure of the regulation, which everywhere points to a freezing of prices as they existed in March 1942, certainly afforded Protestant a rather direct clue to the prices which he might assume would be valid."

The process by which complainant was afforded a "rather definite clue" to the prices which he might assume to be valid, is expressed by the Board of Review, as follows: "Lacking 'direct labor costs paid by you' it seems clear that direct labor costs paid by his competitors would be a guide to the amount of direct labor costs he might safely include in his calculation of maximum prices." The Board of Review also stated that the Administrator had extensively provided in Revised Procedural Regulation No. 1 for the mechanics by which a seller in protestant's position might seek and get the clarity he requires in the application of the Regulation to his own sales.

The Administrator, in his opinion, agreed with the Board's conclusion that the Regulation covered all sellers including, not only those who had been in business on March 31, 1942, but also all who had entered into the business in question subsequent to that time. He further concurred with the Board's holding that the resolution of whatever doubts the complainant may have had respecting the meaning of the Regulation with regard to "direct labor costs" lay in obtaining clarification from the Office of Price Administration in accordance with the provisions of Revised Procedural Regulation No. 1.

The Administrator held that the provision—that "'Direct labor costs' shall be calculated on the basis of wage rates paid by you on March 31, 1942"—is reasonably interpreted as meaning that a manufacturer's costs were to be calculated on the basis of wage rates he paid on March 31, 1942, "or on the basis of wage rates he would have paid had he then been in business." What wage rates would he have paid if he had been in business in 1942? The Administrator found that, in such a case, the manufacturer would have been paying "the wage rates prevailing in the industry at the time for operations of the same kind and quality." Complainant says it had no means to determine what such appropriate wage rates would have been. Indefiniteness, as to the method of determining such rates, the Administrator ruled, would not keep a new manufacturer from making an appropriate determination, that, he said, would be "little different from that which he had in any event to make without reference to the requirements of the regulation." For such a manufacturer, according to the Administrator, must have decided with whom he was competing; and "which manufacturers of the same categories in the same or similar price lines were competing with him for the same classes of trade." Moreover, "he must have been able to discern degrees of skillfulness in the same type of labor so as to maintain effective wage differentials." Furthermore, the Administrator concluded, "it is difficult to conceive how a manufacturer could long exist in the normally highly competitive apparel industry without most carefully making these very determinations. The regulation required him to do no more than apply these indispensable considerations to the wage rates prevailing in March 1942." "If," says the Administrator in his opinion, "he (the new manufacturer) was currently paying top-grade cutter's wages he could have selected the wage that prevailed in March 1942 for top-grade cutters in the category and price line for that area. Conversely, if he was currently paying an inferior cutter's wage it would not have been difficult to find the March 1942 cutter's wage that held the same relative position in the wage scale for cutters in the category and price line for that area. As for the limits of the area, it cannot be said that the area of labor competition is not readily, and with adequate definiteness, ascertainable."

If complainant had no knowledge of the wage scales prevailing in March 1942, the Administrator stated that "the necessary information was ascertainable from manufacturers' associations, trade union sources, and the sellers listed by them as competitors in their own application for price authorization." And, the Administrator concludes, if complainant partners "were unable to obtain the information elsewhere, they could have called upon the Office of Price Administration, which would have given them such information as it had or, if need be, could have procured."

All these are interesting suggestions and speculations how a manufacturer might arrive at conclusions as to what his labor costs in 1942 might have been—if he had been in business in 1942—and how he might ascertain the costs of manufacturing garments during that period. But in spite of the optimistic view of the Administrator that the adoption of such methods would have been easy, and that it would not have been difficult to ascertain what such prevailing wages and costs would have been several years before, we cannot avoid the conclusion that no reasonable means or standards were provided by the Regulation whereby complainant could compute its wage rates, direct labor costs, or maximum prices. No reasonable interpretation of the Regulation could be made which would give any basis on which to ascertain complainant's wage rates or direct labor costs in 1942, if it had been in business at that time. The mandatory direction that labor costs shall be calculated on the basis of "wage rates *paid by you* on March 31, 1942," (emphasis supplied), cannot be construed as "wage rates that would have been paid by you on March 31, 1942, if you had been in business at that time." Language would be deprived of all rational meaning if the Regulation were so interpreted.

The anomaly, as the Board of Review put it, of a Regulation governing prices

for old and new manufacturers, that only provides a standard for computing the maximum prices of old manufacturers, is too great to be resolved by interpretation or clarification. It could not be rectified, as suggested by the Board of Review, by "soliciting and generating further action on the Administrator's part." The conceded indefiniteness of the Regulation in regard to calculating direct labor costs is such that its language cannot reasonably be stretched to mean that it applied to complainant—even considering the inclusive nature of the coverage of the Regulation and the underlying theory and principles of price control.

The impossibility of so interpreting the Regulation is merely emphasized by the contorted arguments advanced with the object of showing that complainant could have determined his wage rates, direct labor costs, and maximum price from the Regulation itself. The Board of Review held that complainant's direct labor costs would, in such event, be based upon the labor costs paid by his competitors. It found that the Regulation as written contained "clues" to prices which complainant "might" assume would be valid; and that, since no mention was made of any standard for complainant's guidance, it could have used its competitors' prices as a guide to the amount of direct labor costs which it "might safely include" in its calculation of maximum prices.

The Administrator held that complainant's costs could be calculated on the wage rates that he would have paid if he had been in business in 1942, and further went on to hold, in a seeming non sequitur, that such wage rates would have been the *prevailing* wage rates in the industry in March, 1942, for operations of the same kind and quality. Why would they have been the prevailing rates? What is the meaning of "prevailing" rates, as that term is used by the Administrator? How are "prevailing" rates determined? We do not know, and we are not told. All of these determinations would have been made by complainant at its peril. The determination, that the foregoing was what the Regulation meant that complainant should do, would also be made at its own risk. And in all of these matters, the Regulation was silent.

Finally, the Administrator urges that if complainant had no knowledge of wage scales prevailing in March 1942, it could ascertain such information from manufacturers' associations, trade union sources, and the sellers listed by him as competitors. It is not necessary to decide this question, but it seems most unlikely that complainant could secure the information in question from such groups and persons. But the Administrator says that in the event that complainant was unable to obtain the requisite information elsewhere, it could have called upon the Office of Price Administration which would have given such information as it had, or if need be, could have procured. This is not to say that the Office had any information of a pertinent nature, or could have procured it. It seems doubtful that anyone had the information which the Administrator claims complainant could have secured. In fact, it appears impossible for anyone to ascertain wage rates or direct labor costs under the indefinite methods which the Administrator now insists complainant should have used. But this is not for our determination. We only decide that the Regulation furnished no standard by which complainant could calculate its wage rates or direct labor costs; and accordingly, that complainant could not determine its maximum prices under the provisions of the Regulation.

There remains one further circumstance to be mentioned. On April 19, 1946, the Office of Price Administrator issued an interpretation that "a new manufacturer who has received an order under Section 12(a) shall calculate his direct labor cost upon wage rates paid on March 31, 1942," by the appropriate industry in the area where the manufacturer is to operate. On May 15, 1946, Amendment 6 to Revised Maximum Price Regulation 287 was issued effective the same date, providing that direct labor cost shall be calculated in accordance with Section 30(a) (10) except that for the purpose of the calculation, the phrase, "wage rates paid by you" shall be interpreted to mean "wage rates paid on March 31, 1942 by manufactureres of the

same category of garments in the same area." This interpretation did not clarify, but instead changed the meaning of the Regulation as it existed at the time this controversy arose. It is in effect an amendment rather than an interpretation, and is not effective to show the meaning of the Regulation as originally written.

As to Amendment 6, it would not, in any event, operate retroactively. Van Der Loo v. Porter, 160 Em.App., 1946, F.2d 110, 113. Moreover, the amendment was issued subsequent to the filing of the protest, and accordingly, no question of its validity was, in the protest, addressed to the Administrator. Its validity was not, therefore, before him for consideration; it was not referred to the Board of Review as a determinative issue, or in any other way; and, while mentioned by the Board in its report and recommendations, its validity was not passed upon, nor could it have been passed upon by the Board, in view of the nature of the protest, and the fact that the question was not referred to the Board. Furthermore, it is to be remarked that the Administrator made no mention of Amendment 6, either in his opinion accompanying the order denying the protest or in the order of denial. The question of the validity of Amendment 6 is not before this court for determination.

In conclusion, it is true, as emphasized by the Administrator, that the Regulation was designed to "freeze" the pattern of prices and wages prevailing in the industry during the base period of March 1942, and that the regulatory scheme was clearly intended to include manufacturers, such as complainant, who had entered the business subsequent to that period. Assuming that the action of the Administrator in his interpretations and orders was inspired by the legitimate purposes mentioned, it does not follow that his determinations in this regard were justified by the Regulation. It is our conclusion that the Regulation did not provide complainant the required standard whereby he could compute and determine his wage rates, direct labor cost, and maximum prices; and this is the controlling issue in the case.

In accordance with the foregoing, a judgment will be entered declaring that Maximum Price Regulation 287 and Revised Maximum Price Regulation 287 are inapplicable to the determination of maximum prices by complainant, and that the orders of July 12, 1943 and April 3, 1944, in so far as they purport to establish such maximum prices or to establish a basis by which such maximum prices may be computed by complainant, are invalid as of the date of their issuance.